No. 14,084.

STATE OF LOUISIANA VS. JOHN LOVE.

SYLLABUS.

1. It may not be legally necessary, in the *proces verbal* of a jury drawing, to recite the names of those stricken from the jury list because of previous jury service, or because of death, removal from the parish, exemption from jury duty, or disqualification as jurors since their names were entered thereon, but it is the better and safer practice to do so.

2. Where, from the *proces verbal*, it seems to appear that the jury commission, in drawing a regular *venire*, failed to supplement the list and the ballots in the box with the names of other persons competent as jurors equal in number to those stricken from the list and whose names were taken out of the box,

thus leaving a depleted box from which they drew the jury, the array of
which is challenged, a motion to quash will prevail.

3.   The drawing of a jury from a box containing less than three hundred names,
is one of those irregularities so gross, so at variance with the strict mandate
of the law, that it amounts to a wrong *per se* on those affected by it, and is
an injury so apparent, and, to those who have reason to complain of it and
do complain of it, *so great,* that they need, in the way of showing injury, do
nothing more than allege injury.

A PPEAL from the Ninth Judicial District, Parish of East Carroll
—*Ransdell, J.*

*Walter Guion,* Attorney General, and *David M. Evans, Jr.,* District
Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*J. M. Kennedy,* for Defendant, Appellant.

The opinion of the court was delivered by

BLANCHARD, J.   The defendant was prosecuted, through bill of
information, for the crime of robbery, convicted by verdict of a jury,
and sentenced to hard labor for ten years.

He appeals.

On the opening day of court he filed a motion to quash and set aside
the *venire* of jurors drawn to serve at that term.

The ground of th s motion was that the jury commission, before
commencing to draw the jury, did not supplement the names in the
jury box and on the jury list with the same number of names of
persons competent as jurors as had been drawn from the box at the
previous jury drawing, and that, in consequence, there were not three
hundred names in the box when the jury was drawn.

He alleged, in the motion, that he was entitled to be tried by a jury
drawn from full 300 names of competent jurors placed in the general
*venire* box, that the drawing of the jury from a box containing less
than 300 names was a legal fraud upon his rights, and that the same
had operated to his great injury.

The trial of this motion was gone into, with the result that the
same was overruled and a bill of exceptions reserved.

This bill was formally presented and signed when the case of
defendant came up for trial before a jury drawn from the *venire*
which had been objected to and the array of which had been chal-
lenged.   The motion to quash and the evidence adduced on the trial
thereof were made part of the bill.

*Ruling*—The jury commission recite in their *proces verbal* that they struck from the general *venire* list the names of all persons who had served as grand and *petit* jurors since the preceding drawing of the general *venire,* and also the names of those on the list who were known to have died, removed from the parish, become exempt from jury duty, or disqualified as jurors since their names were entered thereon. They do not give the names of those who were stricken from the list because of previous service, but they do give the names, eight in number, of those stricken from it because of having died, removed from the parish, or become exempt or disqualified since the last drawing.

It was, perhaps, not legally necessary to recite the names of any of those stricken from the list, but we throw out the suggestion that it is the better and safer practice to do so.

Continuing, the *proces verbal* recites that the names having been stricken from the list, the slips or ballots containing the names as stricken off were removed from the general *venire* box.

This, as far as it goes, is a sufficiently substantial compliance with the requirements of the jury act (No. 135 of 1898).

But the commission seems to have failed to supplement the list, and the ballots in the box, with the names of other persons competent as jurors equal in number to those stricken from the list and taken out of the box—thus leaving a depleted box from which they drew the jury challenged.

It is true the *proces verbal* recites:—

And we, the said commission, then and there, in the presence of said witnesses, supplemented the original list and the ballots in the box with the names of the same number of good and competent men from the qualified jurors of the parish as have been taken from the box and erased from the list, so as to keep the names of the general *venire* box and on the jury list at the number of three hundred—

Had they stopped there their statement could be accepted as one of fact, but from what follows it is transformed from one of fact to a mere conclusion of the commission, and an erroneous conclusion at that. Thus (continuing from where left off above) :—

which supplemental names so selected are as follows, to-wit :—
(then follow the names of eight persons)

and which said names were written by said clerk on said jury list under the supervision of the said jury commission in the presence of said witnesses, and each name was likewise written by said clerk on a separate slip of paper, together with the number of ward or place of residence of said person and such slips deposited in the general *venire* box.

The concluding part of this statement, purporting to give the names of those added to the list and placed in the box, to make up for those taken off and out, modifies and controls the preceding part, and shows that only eight names were added to the list and placed in the box.

With only this number of new names added, it is ascertained from the evidence that the box from which the jury was drawn contained only 220 names, instead of 300, as the law directs.

If there had really been returned to the list and the box the full complement of new names, equalling the number taken therefrom, and the error had been in the *proces' verbal* not so stating, or in .the obscurity of its statements, the State, on the trial of the motion to quash, could easily have shown the true facts, or caused the correction of the *proces verbal* to be made, or its obscurity explained and cleared up by evidence.

But nothing of this kind was done and the unavoidable conclusion is that, judged by the *proces verbal,* only eight new names were added instead of eighty-eight.

To permit a jury commission to draw a regular jury for a term of court from less than the number prescribed by law is, virtually, to permit the commission, itself, to prescribe the number, and thus, practically, to nullify the legal requirement of three hundred names.

If a commission may legally draw a petit jury from 220 names in the box, why not with equal propriety draw one from 100 names, or any less number?

To sanction this would be to invest the commission with power to *select* the petit jury, and thus do away altogether with the drawing by lot or chance.

As well said by the learned counsel, who, appointed by the trial court to defend a penniless negro, has discharged the duty with consummate ability:—

Such a power over the lives and liberty of their fellow citizens could hardly be lodged with safety in the hands of any body of citizens, however honest or upright they might be.

The drawing of the jury in question from only 220 names in the box is one of those irregularities so gross, so at variance with the strict mandate of the law, that it amounts to a wrong *per se* on those affected by it, and is an injury *so apparent,* and, to those who, like the accused, have reason to complain of it, and do complain of it, *so great,* that they

need, in the way of showing injury, do nothing more than allege injury. See State vs. Rector, 35 La. Ann. 1098; State vs. Harris, 34 La. Ann. 118; State vs. Simmons, 43 La. Ann. 991; State vs. Saintes, 46 La. Ann. 547; State vs. Kellogg, 104 La. 585.

It is ordered, adjudged and decreed that the verdict, sentence and judgment appealed from be set aside, reversed and annulled, and that this cause be remanded to the court a qua to be proceeded with according to law.