BREAUX, C. J.
The defendant was prosecuted for forgery and uttering and publishing the forged instrument as true. Found guilty as charged by the jury, he was sentenced to serve two years in the penitentiary.
From the verdict and judgment, he appeals.
In a motion to quash and set aside the indictment, defendant alleged, in substance, that the grand jury which had found and presented the indictment against him was an illegal body by reason of the fact that the jury commission in drawing the grand and petit jury selected the 20 jurors (12 of whom constituted the grand jury by whom the indictment was found) from the general venire box, contrary to law.
The statute requires that, immediately after having completed the general venire list, the commission shall select the names of 20 citizens possessing the qualifications required. Section 4 of Act No. 135 of 1898, p. 218.
The record before us discloses how the grand jury was selected.
One of the jury commissioners, in the presence of the others and the witnesses, selected from the general venire box, after the same had been supplemented and revised as required by law, the names of 20 jurors to serve as grand jurors at the ensuing term of the district court beginning the first Monday in September, 1910, all as the law requires.
The law was in substance followed.
If the commission “selected” the 20, as we have every reason to infer they did, there is no difference whether the selection was made from the names in the box instead of from the list.
Of course, the statute should have been closely followed. We none the less find no fatal error in the selection as made.
We will say in conclusion upon this point that we infer that the commission deliberated over the names and properly selected the 20. In other words, that they acted in common, and nothing was left undone that was essential.
The petit jurors were drawn as required. We found no fatal variance from the requirement of the statute. ■
There was not the least prejudicial error committed in that regard. The names were drawn in a manner sufficiently regular from the body of citizens to pass upon the case of an accused.
His main right to complain arises when something has been done to his prejudice.
In this instance, we have found nothing of the kind.
It must be borne in mind, where there is substantial compliance with the statute, unless there is fraud practiced or wrong inflicted, irregularities are not fatal to the legality of the general venire or the indictment. State v. Sheppard, 115 La. 942, 40 South. 363.
The next plea of the defendant is that the procés verbal of the jury commission fails to state that the absent members were notified; that they received no notice of the meeting, of the time, nor of the place.
As relates to the procés verbal of the com *464 missioners, and the asserted necessity of noting therein that the commissioners have all been notified, we know of no provision of the statute which justifies the conclusion, if the clerk fails to mention the fact that all the jurors have been notified and to state all that it may be deemed advisable to say in that connection, the consequence will be that all the proceedings of the commission will be fatally irregular and illegal.
The statute does not in words impose upon the clerk the necessity of stating that the commissioners have been notified; therefore such a failure cannot be fatal.
There must be a record of the acts of the commissioners as a body. Such a record was made.
Among other objections, the proces verbal of the acts of the commissioners is criticised on the ground that it does not state the names of jurors taken from the box; the number of dead, and other similar statements which might and really should have been made.
The statement in the proces verbal is that the commission revised the general venire box by first taking therefrom the ballots containing the names of such persons as had died or moved away since the last drawing; the said jury, therefore, proceeded to supplement the general venire box.
This is prima facie correct. If it were not, if an error had been committed prejudicial to the defendant, it devolved upon him to prove it.
The record contains a list of names of the 20 grand jurors.
Now, as to the petit jurors, the jury commissioners, it appears, drew from the general venire box the names of 30 jurors to serve as petit jurors.
The 20 names of persons to serve on the grand jury should be selected from the list of 300 names. In accordance with an impulse, which led to the commission of an error, instead of drawing from the jury list, the commissioners selected the 20 from the names placed in the general venire box.
It was an oversight, growing out of a failure, doubtless, to carefully read the statute.
In our opinion, it was not a fatal error provided the commission exercised the judgment required in order to select good, competent jurors.
As relates to the duties of the clerk, they are not necessarily included as part of the acts of that body.
This point has been directly decided.
The court said that the procés verbal in so far as relates to this notice may be supplemented by the clerk’s certificate, and that even parol testimony is admissible to prove that the clerk complied with the statute in this respect. State v. Johnson, 50 La. Ann. 138, 23 South. 199; State v. Bouvy, 124 La. 1058, 50 South. 849; State v. Green, 49 La. Ann. 61, 21 South. 124.
In the next place, the defendant urges that no .notice whatever has been given to the absent commissioners.
Three members and the clerk were present.
The clerk testified on the hearing of the motion to quash that a notice was mailed to each member of the time and place fixed for the meeting; that they were mailed in time to reach each jury commissioner; that they were to be returned in five days if not delivered — a notice printed on the officer’s official envelope.
The statute does not direct how the clerk shall notify the jury commissioners.
The contention of defendant on this point is that the notice is a legal process; it serves a judicial function. When the statute provides that a notice shall be given to the members, notice ought to be issued.
The state and its officers, in putting the machinery of government into operation, cannot in reason be held to the performance of that which is near the impossible.
If a jury commissioner absents himself just before the notice to attend a session of *466 the commission, and goes to a remote corner of Texas where no notice of any kind can reach him, and remains there an indefinite time, the proceedings are not to be interrupted on that account, particularly as the nonaction of the commission may result in continuing a session of the court and in delaying the administration of justice. Bouvy’s Case, 124 La. 1058, 50 South. 849.
An important point presented by the defense, as stated in a bill of exceptions, is that the indictment is fatally defective because it charged two crimes in one count.
The indictment in charging the alleged crime reads that the defendant “willfully and feloniously did falsely make and forge and counterfeit,- and did procure to be made falsely, forged and counterfeited, one certain draft and order for money,” here reciting the alleged forged draft.
The indictment was framed under section 833 of the Revised Statutes.
It denounces forging and counterfeiting or altering, or the one who shall procure to be falsely made, altered, or forged or counterfeited, thus including forgery and passing and uttering as true the forged instrument.
The offense is denounced as one in one statute. While denounced in the alternative, there is a oneness in describing the offense which renders it possible to include the offense as denounced in one indictment.
It is not misleading, whether committed directly by the defendant or whether he procured the offense to be committed are so intimately connected that we do not conceive that there is fatal irregularity in charging both in one count, particularly when, as in this instance, the purpose was to charge the defendant in the language of the statute with having committed the offense.
■The indictment may include in one count the forgery charged, and at the same time state that the defendant did procure to be made and falsely forged a draft.
To constitute a forgery, there must be a false making or other alteration of a written instrument; the intent must be fraudulent, and the instrument such as can effect a fraud.
The law-making power denounces the person who counterfeits or procures to be counterfeited an instrument within the above definition as one offense, and from that viewpoint we do not find error in the two propositions of the statute denouncing one offense.
The defendant is charged as principal; the moving cause; the actor.
The question was passed upon in State v. Flint, 3B La. Ann. 1291. The court held that the offense as charged in one count -was not a fatal defect.
It has been decided that, under an indictment charging defendant with the act, he may be convicted upon proof of procuring the act to be done by another in his presence. McClain, Criminal Law, p.-, § 801; Id. p. -.
Doing and procuring of one and the same instrument may be charged in one count; denounced in one statute. McClain, 'Criminal Law, p. 801, § -; Id. -.
For reasons assigned, the verdict, sentence, and judgment are affirmed.