ST. PAUL, J.
 

 The appellant was indicted for murder, and moved to quash the indictment on the ground that the grand jury was selected from a list containing less than the 300 names required by law (section 4 of Act No. 135 of 1898, as amended by Act No. 58 of 1904), to wit, that the jury list contained only 298 names, apparently a miscount, and that the 298 names represented only 287 persons, nine names having been duplicated and one repeated three times. The trial judge quashed the indictment, and the state appeals. There is no suggestion that the jury commissioners acted fraudulently or even purposely; and the proof is that they did not.
 

 Article 203 of the Code of Criminal Procedure provides: “It shall not be sufficient cause to challenge * * * or to set aside the venire, because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury, * * * unless some fraud has beeh practiced or some great wrong committed that would work irreparable injury. * * * ”
 

 In State v. Foster, 32 La. Ann. 34, this court said, in passing on an analogous case: “In the nature of things the most careful investigation would fail to afford a thoroughly accurate return. * * * But if we hold that the presence of such names [of disqualified persons] in the wheel vitiates the whole selection and drawing in this case, the principle thus established would render it well-nigh impossible to get a panel at all. The law seems to trust the matter to the honesty and discretion of the commissioners, and, in the absence of charges of fraud or corruption, we think it would be unsafe to interfere.”
 

 In that case, out of a panel of 400 names drawn, 352 were found disqualified for va
 
 *195
 
 rious legal causes, thus leaving an available panel of only 48 names instead of 400. The court said: “The commissioners were certainly careless in the discharge of their duties, but there is no pretense that they acted corruptly or from improper motives. * * * [And] We do not think the present case presents legal objections to the panel.”
 

 In State v. Davis, 154 La. 295, 97 So. 449, 451, this court said: “Under the statute of 1898 (No. 135), a venire is not to be quashed merely for irregularities or for noncompliance with the literal requirements of the law in (he matter of selecting and summoning jurors, but only when fraud has been practiced, or some great wrong committed, in the selection and summoning of the jury, that would work irreparable injury” — citing State v. Claxton, 129 La. 591, 56 So. 519; State v. Batson, 108 La. 486, 32 So. 478; State v. Sheppard, 115 La. 942, 40 So. 363; State v. Sturgeon, 127 La. 459, 53 So. 703. See, also, State v. Dreher, 166 La. 941, 118 So. 85; State v. Phillips, 164 La. 597, 114 So. 171; State v. Smothers, 168 La. 1099, 123 So. 781; State v. Marionneaux, 120 La. 464, 45 So. 389; State v. Gonsoulin, 38 La. Ann. 460.
 

 II.
 

 Defendant relies on State v. Love, 106 La. 658, 31 So. 289, 290. In that case the jury commissioners struck from the list of jurors some 80 names and made no effort to supplement said list with an equal number of added qualified jurors. The court said: “To sanction this would be to invest the commission with power to
 
 select
 
 the petit jury, and thus do away altogether with the drawing by lot or chance.” And the final ruling of the court was that, “the drawing of a jury from a box containing less than 300 names is one of those irregularities so gross, so at variance with the strict mandate of the law, that it amounts to a wrong per se on those affected by it, and is an injury so apparent, and, to those who have reason to complain of it and do complain of it,
 
 so great,
 
 that they need, in the way of showing injury, do nothing more than allege injury.”
 

 The principle thus last laid down in that case, and here invoked by the defendant, is so completely at variance and conflicting with all the cases going before and coming after it, that it stands alone, and, if followed, “would render it well-nigh impossible to get a panel at all.” As we have said, it has no precedent and has not been followed since. Vide cases supra.
 

 And in
 
 that aspect
 
 of the case, which is the only one which can have any application here, we again decline to follow it.
 

 In
 
 another aspect,
 
 which has no application here, the court doubtless
 
 decided the case before it correctly,
 
 and announced a sound principle of law, to wit, that the jury commissioners have no power to
 
 select
 
 (directly or indirectly) the jury who are to try the accused, and “do away altogether with the drawing [of jurors] by lot or by chance” from a panel sufficiently numerous to give assurance that the drawing by lot is not a mere idle formality.
 

 And accordingly the jury commissioners may not strike from the
 
 venire
 
 list, and remove from the jury box, the names of jurors found thereon, without replacing them, or at least making a bona fide effort to replace them, by an equal number of qualified jurors sufficient to restore the required 300 names. Eor, if they may strike 20 or 30 or 50 names
 
 *197
 
 from the jury list, without bona fide effort to replace them, or even pretense of doing so, they may in like manner strike 100 names, or 200, or even 276 names, and thus present to the accused exactly 24 names of otherwise fully qualified and apparently impartial jurors, just sufficient in fact to provide for his peremptory challenges and leave him with a neatly hand-picked jury to answer to.
 

 But this case presents no such feature; the jury commissioners admittedly made a bona fide effort to supplement the jury list with qualified jurors sufficient in number to restore the required 300. That they missed the exact count by 2 out of 300, and that some dozen or so of duplications occurred, “can easily be accounted for by the chapter of accidents. Between such a case and that of State v. Love, 106 La. 661, 31 So. 289, * * * there is no analogy whatever.” State v. Marionneaux, 120 La. 464, 45 So. 389, 392.
 

 Decree.
 

 For the reasons assigned, the judgment appealed from is reversed, and it is now ordered ■that the case be remanded to be proceeded with according to law.